THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GLEN MARTIN ENGINEERING, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HUAWEI TECHNOLOGIES JAMAICA ) <br> COMPANY, LTD., ) <br> ) <br> Defendant. ) <br> ) | Case No. 09-4083-CV-C-NKL |

**ORDER**

Pending before the Court is a Motion to Compel Arbitration and Dismiss, or Alternatively, Stay Proceedings filed by Defendant Huawei Technologies Jamaica Company, Ltd. ("Huawei") [Doc. #9]. For the reasons stated below, the Court grant's Defendant's motion and stays the proceedings pending arbitration.

**I.     Background**

At issue is the arbitrability of a dispute between Glen Martin Engineering, Inc. ("Glen Martin") and Huawei over the performance of the parties' contract. On May 1, 2009, Glen Martin filed a Complaint [Doc. #1] against Huawei, alleging a Breach of Contract Claim (Count I) and an Action on Account Claim (Count II). According to its Complaint, Glen Martin is in the business of manufacturing and providing cellular telephone tower parts and services. Huawei is a Jamaican company in the business of contracting with foreign

businesses for the installation of cellular telephone network services and cellular telephone sites.

As the basis of its claims, Glen Martin attaches to its complaint an Account Enrollment form signed by a Yu Wen Jun, financial manager for Huawei, on December 27, 2007 and a Purchase Order dated April 29, 2008. Glen Martin alleges that it provided materials and services to Huawei pursuant to the parties' Purchase Order and that Huawei failed to make timely payments. The Account Enrollment form submitted by Glen Martin provides that Huawei agrees to comply with "1.0 GME Terms and Conditions." Glen Martin only attaches two pages, out of five, of these terms and conditions, specifically citing to subsection 1.25, which provides: "[a]ny litigation will be handled through the Western District of the state of Missouri."

In its Motion, Huawei alleges that the complete contract of the parties has not been submitted by Glen Martin and attaches a declaration from Vipin Chauhan and two additional documents. Huawei asserts, and Glen Martin does not deny, that the parties negotiated a Purchase Agreement dated December 23, 2007, which was executed by both Huawei and Glen Martin. The Purchase Agreement provides that Glen Martin would supply Huawei with towers as specified in a Purchase Order. The Purchase Agreement provides that "[a]ny doubt or difficulty arising between the parties due to the contract herein or its supplemental or modifying documents, as related to interpretation, compliance, validity, termination other cause related to this agreement, will be resolved by means of arbitration, pursuant to the Rules of Jamaica."

Only a few days after the parties executed the Purchase Agreement, on December 27, 2007, Huawei's financial manager signed the Account Enrollment form attached to Glen Martin's Complaint. However, Huawei alleges that it never received the attached terms and conditions and that the Account Enrollment was simply for credit purposes.

On April 29, 2008, Huawei issued a Purchase Order pursuant to paragraph 3.1 of the Purchase Agreement. Huawei further asserts that after the execution of the Purchase Order, a dispute arose between the parties regarding Glen Martin's performance of its obligations under the Purchase Order and Purchase Agreement. The parties negotiated a resolution to the dispute and this resolution was memorialized in a Memorandum of Understanding executed by the parties on June 27, 2008. The Memorandum of Understanding referenced the Purchase Order and also provided that the terms and conditions of the Purchase Agreement "shall apply in full effect." The Memorandum of Understanding did not reference the Enrollment Agreement.

Huawei seeks an Order from this Court compelling arbitration because it argues that the Purchase Agreement controls the dispute and its terms require resolution of the claims asserted by Glen Martin through arbitration. Glen Martin opposes Huawei's Motion, arguing that the Account Enrollment form controls the parties dispute and that document requires resolution of its claims by this Court.

## II. Discussion

A party may request arbitration of claims when parties have agreed in writing to an arbitration and one party has instead filed its claim in a court. 9 U.S.C. § 4. If the Court

determines that the claims are referable to arbitration, then the Court must stay the arbitral claims pending the arbitration. 9 U.S.C. § 3.

The federal courts recognize a strong national policy in favor of arbitration. The presumption is that an arbitration agreement will be enforced. *See Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001); *see also Dobbins v. Hawk's Enters.*, 198 F.3d 715, 717 (8th Cir. 1999) (courts recognize a "broad principle of enforceability" with respect to arbitration agreements) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984)).

Under Eighth Circuit law, "[b]efore a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694-95 (8th Cir. 1994) (citation omitted). Moreover, "any doubts in construing contract language on arbitrability 'should be resolved in favor of arbitration.'" *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 430 (8th Cir. 1998) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24-25 (1983)).

### A. Validity of Arbitration Agreement

State contract law governs the validity of an arbitration agreement. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (citing *Lyster*, 239 F.3d at 946 (8th Cir. 2001); 9 U.S.C. § 2). Under Missouri law, "[t]he primary rule in the interpretation of a contract is to

4

ascertain the intention of the parties and to give effect to that intention." *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991). Extrinsic evidence to ascertain this intention is only admitted if the contract is unclear and ambiguous. *Id.* The test for determining if an ambiguity exists in a written contract is "whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonable average person." *Id.*

At issue in this case is the interpretation of the forum selection clause in the Enrollment Agreement and the arbitration clause in the Purchase Agreement. Although the Eighth Circuit has not addressed the issue, "[c]ourts have held that forum selection clauses are not inherently inconsistent with arbitration agreements, since arbitration awards are not self-enforcing, and the parties may have merely intended to prescribe the method of judicial enforcement of arbitration." *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 988-89 (N.D. Ill. 2007) (citing *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284-85 (2d Cir. 2005); *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 395 (5th Cir. 2002); *Patten Securities Corp., Inc. v. Diamond Greyhound Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987)).

Moreover, when faced with the potential of conflicting forum selection and arbitration clauses, a district court must "carefully scrutinize" the forum selection clause and resolve any doubts regarding whether the dispute is arbitrable in favor of arbitration. *See Patten*, 819 F.2d at 407. Thus, the circuit courts to have addressed the issue have held that forum

selection clauses "are not inconsistent with, but rather complimentary to arbitration provisions." *Spartech CMD, LLC v. Int'l Auto. Components Group N. Am., Inc.*, 2009 WL 440905, at *7 (E.D. Mich. Feb. 23, 2009); *see also Bank Julius Baer*, 424 F.3d at 284.

The forum selection clause in the Enrollment Agreement in this case can be read in harmony with the arbitration agreement in the Purchase Agreement. The language of the forum selection clause is consistent with an intent to address post-arbitration litigation. The clause provides that "[a]ny litigation will be handled through the Western District of the state of Missouri." Litigation is defined as a "[t]he process of carrying on a lawsuit." *Black's Law Dictionary* (8th ed. 2004). Thus, the language of the forum selection clause is in reference to litigation, not arbitration.

Furthermore, the language in the forum selection clause does not specifically exclude arbitration. In *Bank Julius Baer*, the court concluded that because the forum selection clause in one contract did not reference the arbitration agreement in another related contract it was at least ambiguous. 424 F.3d at 285. When faced with the potential for such ambiguity, the court ordered arbitration because any doubts regarding arbitrability should be resolved in favor of arbitration. *Id.* Similarly, in this case, the forum selection clause does not explicitly exclude arbitration but rather uses language that references litigation. *See, e.g.*, *id.* ("[We] cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration." (quoting *Personal Sec.*, 297 F.3d at 396 n.11)). For this reason, the court concludes that the arbitration agreement is valid.

   B.   **Scope of Arbitration Agreement**

Having determined that there was an agreement to arbitrate, Glen Martin's claims are arbitrable unless they are outside the scope of that agreement. *See Houlihan*, 31 F.3d at 694-95. Glen Martin does not argue that if the arbitration clause is valid, then its claims are not within the scope of such agreement. Indeed, the arbitration clause in the Purchase Agreement is broad as it applies to "any doubt or difficulty arising between the parties to the contract herein or its supplemental or modifying documents, as related to interpretation, compliance, validity, termination other cause related to this agreement . . . ." Glen Martin's complaint alleges that it was not paid certain amounts for work completed pursuant to the Purchase Order, which was issued pursuant to Purchase Agreement. Accordingly, the dispute at issue in this case falls within the scope of the arbitration clause in the Purchase Agreement.

## III. Conclusion

Accordingly, it is hereby ORDERED that [Doc. # 9] is GRANTED. The Court stays these proceedings pending the arbitration.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: January 20, 2010
Jefferson City, Missouri